IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: DANIEL LEE RITZ, JR., a/k/a BO RITZ<br>Debtor | § § § § § | CASE NO. 09-39895<br><br>CHAPTER 7 |
| HUSKY INTERNATIONAL ELECTRONICS, INC.,<br>Plaintiff<br><br>vs.<br><br>DANIEL LEE RITZ, JR.,<br>Defendant | § § § § § § § § § § | ADVERSARY PROCEEDING NO._____ |

**PLAINTIFF'S ORIGINAL COMPLAINT TO DENY DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §523**

Husky International Electronics, Inc., creditor herein (hereinafter "Plaintiff" or "Husky"), files this Complaint to Deny Dischargeability of Debt Pursuant to 11 U.S.C. §523. In support hereof, plaintiff states as follows:

### I. JURISDICTION

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157, §1334 and 11 U.S.C. §523. This is a core proceeding under 28 U.S.C. §157(b)(1) and § 157(b)(2)(B), (I) and (O). This adversary proceeding is brought in connection with Defendant's case under Chapter 7 of Title 11 U.S.C., Case No. 09-39895.

## II. VENUE

2.     Venue is proper under 28 U.S.C. §1409(a).

## III. PARTIES

3.     Plaintiff Husky International Electronics, Inc., is a Colorado corporation.

4.     Defendant Daniel Lee Ritz, Jr., Debtor and Defendant herein ("Debtor" or "Defendant"), is an individual residing in Harris County, Texas, who may be served with the summons and complaint in accordance with Bankruptcy Rule 7004(b)(9) by mailing it to Defendant by U.S. First Class Mail, postage prepaid to the mailing address shown in his petition, 20615 Denford Court, Katy, Texas, 77450. Jeffrey S. Williams is the Debtor's attorney and may be served with a copy of the summons and complaint in accordance with Bankruptcy Rule 7004(b)(9) by U.S. First Class Mail, postage prepaid, at 11200 Westheimer, Suite 900, Houston, Texas 77042.

## IV. NATURE OF THE CASE

5.     This is an adversary proceeding on plaintiff's fraud claims against the debtor. This suit seeks to reduce the debt to a judgment against debtor and requests a determination that the judgment is a debt that should not be discharged by the Bankruptcy Court pursuant to 11 U.S.C. §523(a)(2), (a)(4) and (a)(6).

## V. FACTUAL BACKGROUND

6.     Husky is a Colorado seller and distributor of electronic device components. Ritz was a director and owner of the now-defunct Chrysalis

Manufacturing Corporation ("Chrysalis"), a manufacturer of electronic circuit boards and other devices. Chrysalis purchased components from Husky to make the electronic circuit boards and other devices that Chrysalis then sold.

7.  Husky and Chrysalis entered into a "Master Credit and Sales Agreement" (the "Master Agreement"). The Master Agreement provided that Husky would deliver merchandise to Chrysalis pursuant to the exchange of purchase orders and confirmations. Pursuant to the Master Agreement, Chrysalis placed numerous orders for components which Husky filled and delivered.

8.  However, instead of using the proceeds from the sale of circuit boards and other devices to pay Husky for the components, Ritz caused Chrysalis to dissipate the funds to Ritz's family members and to other companies Ritz owned. Ritz then caused the insolvent Chrysalis to file bankruptcy, as a result of which Chrysalis failed to pay Husky for **$182,433.04** in components.

9.  Specifically, between November 2006 and May 2007, Ritz transferred more than **$1,200,000.00** of Chrysalis' cash in *at least* the following individual amounts to the following seven entities and to Ritz's father:

    (i)   **$677,622.00** to ComCon Manufacturing Services, Inc., a/k/a VirTra Merger Corporation;

    (ii)  **$121,821.00** to CapNet Securities Corporation;

    (iii) **$52,600.00** to CapNet Risk Management, Inc.;

    (iv)  **$172,100.00** to Institutional Capital Management, Inc., and Institutional Insurance Management, Inc.;

    (v)   **$99,386.90** to Dynalyst Manufacturing Corporation;

    (vi)    **$26,500.00** to Clean Fuel International Corp., a/k/a Gulf Coast Fuels, Inc.;

    (vii)    **$11,240.00** to CapNet Advisors Incorporated; and

    (viii)    **$60,000.00** to Daniel Lee Ritz, Sr., (Ritz's father).

Ritz was the registered agent for five[1] of the seven entities that reaped the benefits of the monies Ritz transferred, and the registered agent for the remaining two, Leon Andrew Wells, shared Ritz's office address at 2500 City West Blvd., Suite 700, Houston, Texas 77042. Ritz testified on March 27, 2008, that he owned *at least* the following percentages of the named companies:

    (i)    CapNet Securities Corporation—**85%**;[2]

    (ii)    Institutional Capital Management, Inc.—**40%**[3];

    (iii)    Institutional Insurance Management, Inc.—**100%**;[4]

    (iv)    Dynalyst Manufacturing Corporation—**25%**;[5] and

    (v)    Clean Fuel International Corp., a/k/a Gulf Coast Fuels, Inc.—**20%**.[6]

    10.    Ritz could not remember if he was a stockholder in the remaining companies to which he wired money (because "I've invested in a number of different companies as a stockholder [and] I don't think I could name them all"[7]). However, Ritz did remember that he is also chairman and director of Dynalyst

---

[1] Ritz is registered agent for (i) ComCon Manufacturing Services, Inc, a/k/a VirTra Merger Corporation; (ii) CapNet Risk Management, Inc.; (iii) Institutional Capital Management, Inc.; (iv) Institutional Insurance Management, Inc.; and (v) Clean Fuel International Corp.
[2] Ritz deposition of March 27, 2008, 132:23-24.
[3] Ritz deposition of March 27, 2008, 148:1-6.
[4] Ritz deposition of March 27, 2008, 34:25-35:1.
[5] Ritz deposition of March 27, 2008, 135:1-2.
[6] Ritz deposition of March 27, 2008, 34:23-24.
[7] Ritz deposition of March 27, 2008, 16:14-19.

Manufacturing Corporation;[8] president, secretary, treasurer, and director of Institutional Insurance Management, Inc.;[9] director and CEO of Capnet Securities Corporation;[10] a director of Capnet Advisors, incorporated;[11] and a director of CapNet Risk Management, Inc.[12]

11. As a result of Ritz having wired Chrysalis' money to his family members and closely-held companies as detailed above, Chrysalis issued a check dated **November 1, 2006**, with Chrysalis as drawee and Husky as payee in the amount of **$10,505.25**. This check was returned "NSF" when presented by Husky for payment. On **November 14, 2006**, Chrysalis issued a check to Chrysalis as drawee and Husky as payee in the amount of **$14,025.00**. This check was returned NSF when presented by Husky for payment. On **December 19, 2006**, Chrysalis issued a check in the amount of **$23,559.48**. This check was returned "NSF" when presented by Husky for payment. On **December 22, 2006**, Chrysalis issued a check in the amount of **$40,000.00**. Like the others, this check was returned "NSF" when presented by Husky for payment.

---

[8] Ritz deposition of March 27, 2008, 14:17.
[9] Ritz deposition of March 27, 2008, Exhibit 3, p.1.
[10] Ritz deposition of March 27, 2008, 29:19-21 and Exhibit 3, p.1.
[11] Ritz deposition of March 27, 2008, Exhibit 3, p.2.
[12] Ritz deposition of March 27, 2008, Exhibit 3, p.2.

## VI. CAUSES OF ACTION

### A. First Cause of Action—Ritz's Statutory Liability for Chrysalis' Breach of Contract

12.  Plaintiff incorporates by reference paragraphs 6-11 above, as if fully set forth below.

13.  Ritz used Chrysalis to perpetrate an actual fraud on Husky primarily for his direct personal benefit. Therefore, Ritz is personally liable for Chrysalis' breach of contract. TEX. BUS. ORG. CODE §21.223(b) (formerly TEX. BUS. CORP. ACT §2.21); *Willis v. Donnelly*, 199 S.W.2d 262, 272 (Tex. 2006); *see also **PHC-Minden, L.P. v. Kimberly-Clark Corp.***, 235 S.W.3d 163, 173 (Tex. 2007). Thus, an obligee such as Husky may hold a corporate shareholder individually liable for the corporation's contractual obligations. *Id.*

14.  Ritz's failure to pay caused damages to Husky for which it here sues. Husky is entitled to reasonable attorney's fees incurred to assert its claims in this suit pursuant to TEX. CIV. PRAC. & REM. CODE §38.001, *et seq.*, for which Husky also here sues. Husky is also entitled to late charges, interest, statutory penalties, and other damages recoverable at law or in equity, for which Husky also here sues.

## B. Second Cause of Action—Common-Law Fraud

15.     Plaintiff incorporates by reference paragraphs 6-11 above, as if fully set forth below.

16.     By the various actions specified taken on the dates shown above, Ritz used Chrysalis to perpetrate a fraud on Husky, creating the impression that Husky would be paid for its goods while instead dissipating and transferring the money that could have paid for the goods to Ritz's closely-held companies and family members.  Ritz's representations to Husky were material because they induced Husky to enter into—and continue—a business relationship which brought Husky to the brink of financial ruin.  Ritz did not have the present intention that Chrysalis perform when Ritz used Chrysalis to induce Husky to sell goods. Ritz knew the representations were false or made said false representations recklessly, as a positive assertion, and without knowledge of their truth.  Ritz intended for Husky to rely on the false representations. Husky justifiably relied on the false representations when it provided the goods to Chrysalis.

17.     Ritz's frauds directly and proximately caused injury to Husky, for which Husky here sues.  Because Husky's injury resulted from Ritz's actual fraud or malice, Husky is entitled to exemplary damages under TEX. CIV. PRAC. & REM. CODE § 41.003(a), for which Husky here also sues.

### C. Third Cause of Action—Equitable Recovery in Quantum Meruit

18. Plaintiff incorporates by reference paragraphs 6-11 above, as if fully set forth below.

19. Husky provided Ritz (through Chrysalis) with valuable goods totaling **$182,433.04**. Plaintiff provided the goods for Chrysalis' benefit. Chrysalis accepted and used the goods. Ritz knew or should have known that Husky expected compensation because Ritz had reasonable notice that Husky expected compensation when Chrysalis accepted the goods. Chrysalis' acceptance of the goods without payment caused damages for which Husky here sues.

### D. Fourth Cause of Action—Breach of Fiduciary Duty

20. Plaintiff incorporates by reference paragraphs 6-11 above, as if fully set forth below.

21. Chrysalis was insolvent, as evidenced by the numerous checks it sent to Plaintiff that were returned "NSF" and that Chrysalis shortly thereafter filed for bankruptcy. When a corporation is insolvent, a fiduciary relationship arises between officers and directors of the corporation and its creditors, and creditors may challenge a breach of the duty. ***Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.***, 779 S.W.2d 474, 477 (Tex. App.—El Paso 1989, writ denied); ***Martin v. Kagan (In re Tufts Elecs., Inc.)***, 746 F.2d 915, 917 (1st Cir. 1984). Officers and directors of an insolvent corporation have a fiduciary duty to deal fairly with the corporation's creditors, and that duty includes preserving the value of the corporate assets to pay corporate debts without preferring one creditor over

another or preferring themselves to the injury of other creditors. *See **Tigrett v. Pointer**,* 580 S.W.2d 375, 383-85 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.).

22.  As an officer and director of the insolvent Chrysalis, Ritz owed Husky a fiduciary duty to preserve Chrysalis' assets to pay its creditors fairly. In such a fiduciary relationship, Ritz was bound to act in good faith and with due regard to Husky's interests. ***Judwin Props., Inc. v. Griggs & Harrison***, 911 S.W.2d 498, 506 (Tex. App.—Houston [1st Dist.] 1995, no writ). In addition, fiduciaries owe their beneficiaries (i) a duty of candor; (ii) a duty to refrain from self-dealing; (iii) a duty to act with integrity of the strictest kind; (iv) a duty of fair, honest dealing; and (v) a duty of full disclosure.

23.  Ritz, by his various defalcations, self-dealing, dishonesty, and preferring other creditors over Husky, breached his fiduciary duties to Husky. Ritz's breaches of fiduciary duty resulted in both injury to Husky and personal benefit to Ritz. As a result, Husky is entitled to, and here sues for, (i) out-of-pocket losses and expenses, (ii) lost profits, (iii) exemplary damages in an amount not less than $400,000.00, (iv) an accounting, and (v) appointment of a receiver.

### VII. EXCEPTION TO DISCHARGE FOR DEBTS FOR FRAUD AND BREACH OF FIDUCIARY DUTY

24.  A debt for money or property obtained by fraud is an exception to discharge under 11 U.S.C. §523(a)(2). A debt for fraud or defalcation while acting in a fiduciary capacity is an exception to discharge under 11 U.S.C. §523(a)(4). An award of exemplary damages for Ritz's willfully and maliciously

injury through her fraud will be a debt for willful or malicious injury and an exception to discharge under 11 U.S.C. §523(a)(6).

## VIII. JURY DEMAND

25.  Plaintiff requests a jury trial of his claims.

## IX. PRAYER

26.  For these reasons, Plaintiff prays that summons be issued for Defendant to appear and answer, and that Husky be awarded judgment against Defendant for the following:

 (i)   Actual damages;

 (ii)  Avoidance of all fraudulent transfers to the extent necessary to satisfy Plaintiff's claims;

 (iii) Exemplary damages;

 (iv)  Prejudgment and postjudgment interest at the maximum lawful rate;

 (v)   Attorney's fees;

 (vi)  Court costs; and

 (vii) All other relief to which Plaintiff shall show itself to be justly entitled;

together with a determination that the judgment entered may not be discharged by Defendant's bankruptcy pursuant to 11 U.S.C. §523(a).

Respectfully submitted,

ESCAMILLA, PONECK & CRUZ, LLP

By: _____

Jeffrey L. Dorrell
State Bar No. 00787386
Federal I.D. 18465
201 Stratford
Houston, Texas 77006-3219
Telephone: 713-426-1516
FAX: 713-864-0048
jdorrell@epc-law.com
**ATTORNEYS FOR PLAINTIFF**