IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: DANIEL LEE RITZ, JR., | § | |
| a/k/a BO RITZ | § | CASE NO.  09-39895 |
|     Debtor | § | |
| | § | CHAPTER 7 |
| _____ | | |
| | § | |
| HUSKY INTERNATIONAL | § | |
| ELECTRONICS, INC., | § | |
|     Plaintiff | § | |
| v. | § | ADVERSARY PROCEEDING |
| | § | NO. 10-03156 |
| DANIEL LEE RITZ, JR., | § | |
|     Defendant | § | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST RITZ AS A SANCTION FOR DELIBERATE AND WILLFUL DISCOVERY ABUSE**

**Plaintiff asks the Court to render a default judgment against Ritz as a sanction for deliberate and willful discovery abuse for which Ritz is personally responsible, which substantially prejudices Husky, and which threatens to interfere with the rightful decision of the case.**

## I. INTRODUCTION

1.   Plaintiff Husky International Electronics, Inc. ("Husky") is a Colorado corporation; defendant is natural person Daniel Lee Ritz, Jr.

2.   This case is set for trial in the week of **December 13, 2010**.

## II. FACTS

3.   Husky is a Colorado seller and distributor of electronic device components.  Ritz was a director and owner of the now-defunct Chrysalis Manufacturing Corporation ("Chrysalis"), a manufacturer of electronic circuit

boards and other devices. Ritz's Chrysalis purchased components from Husky to make the electronic circuit boards and other devices that Chrysalis sold.

4. Husky filled numerous orders from Chrysalis. However, when Chrysalis sold the products made with Husky components, instead of paying Husky, Ritz caused Chrysalis to dissipate the funds to Ritz's father and to other companies Ritz owned, rendering Chrysalis insolvent. Chrysalis then filed for bankruptcy, leaving Husky unpaid for **$182,433.04** in components.

5. Bank statements produced in an earlier state-court lawsuit showed that between November 2006 and May 2007, Ritz transferred more than **$1,200,000.00** of Chrysalis' cash in *at least* the following individual amounts to the following seven entities and to Ritz's father:

- (i) **$677,622.00** to ComCon Manufacturing Services, Inc., a/k/a VirTra Merger Corporation;

- (ii) **$121,821.00** to CapNet Securities Corporation;

- (iii) **$52,600.00** to CapNet Risk Management, Inc.;

- (iv) **$172,100.00** to Institutional Capital Management, Inc., and Institutional Insurance Management, Inc.;

- (v) **$99,386.90** to Dynalyst Manufacturing Corporation;

- (vi) **$26,500.00** to Clean Fuel International Corp., a/k/a Gulf Coast Fuels, Inc.;

- (vii) **$11,240.00** to CapNet Advisors Incorporated; and

- (viii) **$60,000.00** to Daniel Lee Ritz, Sr., (Ritz's father).

6.   Ritz was the registered agent for five[1] of the seven entities receiving the transfers. The registered agent for the other two, Leon Andrew Wells, shared Ritz's office at 2500 City West Blvd., Suite 700, Houston, Texas 77042. Ritz testified that he owned *at least* the following percentages of the named companies:

(i)   CapNet Securities Corporation—**85%**;[2]

(ii)   Institutional Capital Management, Inc.—**40%**;[3]

(iii)   Institutional Insurance Management, Inc.—**100%**;[4]

(iv)   Dynalyst Manufacturing Corporation—**25%**;[5] and

(v)   Clean Fuel International Corp., a/k/a Gulf Coast Fuels, Inc.—**20%**.[6]

7.   Ritz claims he does not remember if he was a stockholder in the remaining companies to which he wired money (because "I've invested in a number of different companies as a stockholder [and] I don't think I could name them all"[7]). However, Ritz did remember that he is also chairman and director of Dynalyst Manufacturing Corporation;[8] president, secretary, treasurer, and director of Institutional Insurance Management, Inc.;[9] director and CEO of Capnet

---

[1]   Ritz is registered agent for (i) ComCon Manufacturing Services, Inc, a/k/a VirTra Merger Corporation; (ii) CapNet Risk Management, Inc.; (iii) Institutional Capital Management, Inc.; (iv) Institutional Insurance Management, Inc.; and (v) Clean Fuel International Corp.
[2]   **Exhibit A**, Ritz deposition of March 27, 2008, 132:23-24.
[3]   **Exhibit A**, Ritz deposition of March 27, 2008, 148:1-6.
[4]   **Exhibit A**, Ritz deposition of March 27, 2008, 34:25-35:1.
[5]   **Exhibit A**, Ritz deposition of March 27, 2008, 135:1-2.
[6]   **Exhibit A**, Ritz deposition of March 27, 2008, 34:23-24.
[7]   **Exhibit A**, Ritz deposition of March 27, 2008, 16:14-19.
[8]   **Exhibit A**, Ritz deposition of March 27, 2008, 14:17.
[9]   **Exhibit A**, Ritz deposition of March 27, 2008, Exhibit 3, p.1.

Securities Corporation;[10] a director of Capnet Advisors, incorporated;[11] and a director of CapNet Risk Management, Inc.[12]

8.      As a result of Ritz's having wired Chrysalis funds to his father and the seven closely-held companies as named above, Chrysalis issued the following "NSF" checks to Husky in the same period:

|  |  |
|---|---|
| **November 1, 2006** | **$10,505.25** |
| **November 14, 2006** | **$14,025.00** |
| **December 19, 2006** | **$23,559.48** |
| **December 22, 2006** | **$40,000.00** |

After December 2006, Chrysalis abandoned even the pretense of issuing bad checks to Husky.

9.      Husky's legal odyssey to recover the **$182,433.04** it is owed is currently in its fourth year, having begun in the 280th State District Court in 2007 (terminated by Chrysalis' bankruptcy in 2008), continued in U.S. District Court the following year (terminated by Ritz's personal bankruptcy in 2009), and ended in the instant adversary proceeding.  Because Ritz used Chrysalis to perpetrate a fraud on Husky, Ritz is personally liable for the debt to Husky arising from Chrysalis' breach of contract.  Husky sued Ritz for the debt under TEX. BUS. ORG. CODE §21.223(b) (formerly TEX. BUS. CORP. ACT §2.21).  Husky also

---

[10]   **Exhibit A**, Ritz deposition of March 27, 2008, 29:19-21 and Exhibit 3, p.1.
[11]   **Exhibit A**, Ritz deposition of March 27, 2008, Exhibit 3, p.2.
[12]   **Exhibit A**, Ritz deposition of March 27, 2008, Exhibit 3, p.2.

sued Ritz for breach of fiduciary duty as an officer and director of the insolvent Chrysalis.[13]

10. Ritz contends that the transfers from Chrysalis to Ritz's closely-held entities between November 2006 and May 2007 were not fraudulent as to Husky because they were repayments of legitimate loans or "infusions" made to Chrysalis.[14] To learn if evidence substantiated Ritz's contention, Husky propounded Interrogatories 1-25, Requests for Production 1-105, and Requests for Admissions 1-57 to Ritz seeking information about such companies and the individuals involved in them. However, Ritz's gamesmanship in avoiding answering Husky's discovery requests was as artful as his "shell game" of moving money in and out of his alter-ego companies.

11. For example, Husky's <u>Interrogatory No. 10</u> asked Ritz to furnish the names, addresses, and telephone numbers of the officers, directors, and registered agents of the transferee entities. On **July 6, 2010**, Ritz served his response. **Exhibit B**. Not a single officer, director, or registered agent was named for any

---

[13] Officers and directors of an insolvent corporation have a fiduciary duty to deal fairly with the corporation's creditors, and that duty includes preserving the value of the corporate assets to pay corporate debts without preferring one creditor over another or preferring themselves to the injury of other creditors. *See **Tigrett v. Pointer**,* 580 S.W.2d 375, 383-85 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.). As an officer and director of the insolvent Chrysalis, Ritz owed Husky a fiduciary duty to preserve Chrysalis' assets to pay its creditors fairly. In such a fiduciary relationship, Ritz was bound to act in good faith and with due regard to Husky's interests. ***Judwin Props., Inc. v. Griggs & Harrison***, 911 S.W.2d 498, 506 (Tex. App.—Houston [1st Dist.] 1995, no writ). In addition, fiduciaries owe their beneficiaries (i) a duty of candor; (ii) a duty to refrain from self-dealing; (iii) a duty to act with integrity of the strictest kind; (iv) a duty of fair, honest dealing; and (v) a duty of full disclosure.

[14] Even assuming Ritz's claim to be true, Ritz is still not permitted to prefer his own family members and alter-ego entities as creditors over Husky, and his having done so is a breach of his fiduciary duty to Husky even if all payments to the other entities were legitimate.

entity, and no other information was provided. Instead, Ritz responded with the following as to each entity:

> **Defendant agrees to produce all documents that are currently within Defendant's custody or control, <u>if any</u>, as they are kept in the usual course of Defendant's business, at Defendant's offices, on a date mutually agreed upon by Plaintiff and Defendant, that will permit Plaintiff to answer this question. The records referred to are the corporate minute book and stock transfer ledger for each company in question.**

**Exhibit B** [Emphasis added].

12. On **July 28-29, 2010**, Ritz did a "document dump," producing approximately 30 banker's boxes—or about 150,000 pages—of documents in two different locations. Although plaintiff's legal team spent approximately 10 hours seining Ritz's boxes for responsive documents and selected 10,467 pages for copying (at a cost of $1,702.83), no documents reflecting the names and other information requested were located. Ritz used a similar tactic in responding to the rest of Husky's discovery. The results were the same. Instead of being made under oath with a sworn affidavit as required by FED. R. CIV. P. 33(b)(3), Ritz's answers were accompanied by something denominated an "Unsworn Declaration Under Penalty of Perjury." **Exhibit B**, p. 77. Husky was left with little or no new information regarding the alter-ego entities Ritz used to hide Chrysalis money shortly before taking Chrysalis to bankruptcy.

13. The "smoking gun" in Ritz's tactic of deliberate obfuscation is a July 6, 2010, e-mail from Ritz's personal assistant to Ritz—apparently inadvertently included among the documents produced. **Exhibit C**. Ritz's assistant proposed an answer to <u>Interrogatory No. 10</u> that *would have revealed* the names of the officers

and directors of each company that the interrogatory requested. *Id*. However, Ritz chose not to provide the requested information. Instead, Ritz served Husky the evasive response quoted above—that Husky would have to search through the 150,000 pages of documents Ritz produced for documents containing the requested information, "*if any*." Thus, Ritz derived the answers to Husky's requests *for himself*, but withheld them from Husky in favor of a "document dump" designed to exhaust Husky's limited resources and obscure discoverable information.

### III. ARGUMENT & AUTHORITIES

#### A. "Document Dumps" and "Vague References to Documents" Are Not Adequate Responses to Discovery Requests

14. Ritz's production of 30 banker's boxes of documents in which the answers to interrogatories might *possibly* to be found ("*if any*") is inadequate. *See* **SEC v. Elfindepan**, 206 F.R.D. 574, 576 (M.D.N.C.) ("document dumps" and "vague references to documents" are not sufficient answers to interrogatories). A party cannot tell the requesting party that it must find the answer by searching the party's records. **EEOC v. General Dynamics Corp**., 999 F.2d 113, 118 (5th Cir. 1993); **Govas v. Chalmers**, 965 F.2d 298, 302 (7th Cir. 1992).

15. Ritz's responses were so evasive that they amounted to no response at all. **Coane v. Ferrara Pan Candy Co**., 898 F.2d 1030, 1031 n.1 (5th Cir. 1990). The fact that Ritz personally directed a strategy of obfuscation while clearly in possession of the responsive information he was concealing is discovery abuse that justifies the extreme sanction of a default judgment.

## B. Why the Court Should Impose the Severe Sanction of a Default Judgment to Punish Ritz's Discovery Abuse

16. The Court has discretion to impose discovery sanctions under FED. R. CIV. P. 37(b)(2). *See, e.g.*, **Gomez v. Martin Marietta Corp**., 50 F.3d 1511, 1519 (10th Cir. 1995). The purpose of discovery sanctions is to secure compliance with the discovery rules, to deter violation of the discovery rules by others, and to punish parties for discovery violations. **National Hockey League v. Metropolitan Hockey Club, Inc**., 427 U.S. 639, 643 (1976). A court may strike pleadings in whole or in part, dismiss the case in whole or in part, or render a default judgment. FED. R. CIV. P. 37(b)(2)(A)(iii)-(vi); **Degen v. U.S.**, 517 U.S. 820, 827 (1996).

17. Because a "death penalty" sanction prevents resolution of claims on the merits, due process concerns are heightened whenever it is used. **Brinkman v. Abner**, 813 F.2 744, 749 (5th Cir. 1987). However, the court is not required to state that it has considered lesser sanctions and found them to be inappropriate before imposing a severe sanction. **Phipps v. Blakeney**, 8 F.3d 788, 790 (11th Cir. 1993). For over 100 years, the Supreme Court has approved the sanction of dismissal or default judgment when the party's conduct is based on bad faith, obstructiveness, or failure to produce material evidence. *See* **Hammond Packing Co. v. Arkansas**, 212 U.S. 322, 349-54 (1909) (striking pleadings and entering default judgment did not violate due process because party's conduct justified presumption that its claim lacked merit). Courts use several criteria to decide when such a sanction is appropriate—Ritz's conduct here meets *all* of them.

(i) **Willfulness**. A court may enter a default judgment when a party's conduct is due to willfulness or bad faith. *National Hockey League*, 427 U.S. at 643; *Proctor & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005); *Baba v. Japan Travel Bur. Int'l*, 111 F.3d 2, 5 (2d Cir. 1997); *Coane*, 898 F.2d at 1032. Only very rarely does there come to light such clear and dramatic evidence of willful concealment as the Ritz e-mail of July 6, 2010, **Exhibit C**. When a party has the ability to comply—as Ritz did here—a willful or bad-faith refusal will justify dismissal. *Regional Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 153-54 (6th Cir. 1988).

(ii) **Violation attributable to client**. A court ordinarily may dismiss a party's claim or defense on the merits only when the failure to comply with discovery requests is attributable to the client and not the attorney. *Coane*, 898 F.2d at 1032; *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987). Only very rarely does there come to light such clear and dramatic evidence that the discovery abuse was undertaken by the *client* and not the lawyer—Ritz represents himself pro se and was the recipient of his own assistant's e-mail providing the information Ritz chose to conceal. **Exhibit C**.

(iii) **Interference with truth**. A court may enter a default judgment when the violation (1) threatens to interfere with the "rightful decision" of the case and (2) makes it impossible to be confident that the parties will ever have access to the true facts. *Connecticut Gen. Life Ins. Co. v. New Images*, 482 F.3d 1091, 1097 (9th Cir. 2007). This is precisely the posture of the case at bar. But for Husky's serendipitous discovery of the e-mail (**Exhibit C**) revealing Ritz's bad faith, it would never have been discovered that Ritz was deliberately concealing information. Because of this, it will never be known whether Ritz has revealed the truth as to any other matter.

(iv) **Substantial prejudice**. A court may enter a default judgment when the party's conduct has substantially prejudiced the other party. *Bass v. Jostens, Inc.*, 71 F.3d 237, 242 (6th Cir. 1995) (refusal to answer interrogatories for over one year hindered other party's ability to conduct discovery); *Coane*, 898 F.2d at 1032; *Brinkmann*, 813 F.2d at 749. Although Husky's discovery requests were initially served on April 9, 2010, Ritz did not serve responses until July 6, 2010, and the allegedly responsive documents were not made available for Husky's inspection until July 28, 2010. Analysis of the documents required weeks, and eventually revealed that no new information had been disclosed. As of the date this motion is filed, the discovery period is over, trial is barely 60 days away, and Husky's discovery has been thwarted by Ritz's deliberate and cynical tactics.

    (v)    **Delay & public interest**.  A court may enter a default judgment based on a public interest in the expeditious resolution of litigation when a party's action creates unjustified delays. ***Connecticut Gen.***, 482 F.3d at 1096; ***Coane***, 898 F.2d at 1032.  To be fair to Husky, Ritz's discovery abuse would necessitate an order compelling adequate answers, allowing joinder as new defendants the Ritz alter-ego companies to whom Ritz transferred Chrysalis funds, an order reopening discovery to allow at least for a deposition of Ritz to examine him on the adequate answers to Husky's discovery requests once they are provided, a delay in trial of at least 6 months to allow Husky to retain a Certified Fraud Examiner as a testifying expert to offer opinions regarding Ritz's 150,000 pages of documents, and the payment by Ritz to Husky of at least **$25,000.00** to compensate Husky for the additional expense such unnecessary delays will inevitably cause.

It is rare indeed that the proverbial "smoking gun" of discovery abuse will be found with the defendant's fingerprints on it and the plaintiff's blood red upon the defendant's hands.  Here, **Exhibit C** demonstrates beyond doubt that Ritz willfully engaged in the most flagrant and bad-faith discovery abuse to ensure that Husky will never be able to collect the money Ritz owes to Husky.

### C. Ritz Refused to Comply With Several Requests From Husky to Supplement or Amend His Answers

18.    Before filing this motion, Husky attempted in several ways to persuade Ritz to serve proper discovery answers without the Court's intervention.  These efforts were unsuccessful.  They included e-mails dated July 30, 2010, August 9, 2010, and August 18, 2010, from legal assistant Mike Centeno to Ritz's assistant Heather Cheaney to follow up on documents[15] promised by Ritz but

---

[15]    The documents were supposedly responsive to Husky Requests for Production 39, 52, 53, 55, 70, 71, and 72.

never produced.  **Exhibit D**.  The only response from Ritz's assistant ever received was on **August 19, 2010**:

> **Mike,**
>
> **I spoke with Bo [Ritz] yesterday about these missing items.  He is out of town right now so I emailed him all the necessary information he needs to call Amegy Bank today to get an "eta" on the bank statements that were requested.**
>
> **I will let you know when I find out any news.**
>
> **Heather**

**Exhibit D**.  In the 7 weeks since then, no further e-mails or other communications have ever been received.  Ritz has produced no additional documents.

19.   In addition, Husky's attorney wrote to both Ritz and Ritz's attorney[16] citing the case authorities cited in this motion regarding "document dumps" and stating:

> Please consider this Husky's attempt to resolve a discovery dispute without court intervention.  We request that Mr. Ritz's answers to Husky's Interrogatories 1-25 be amended to remove vague references to "documents, if any" and provide the information called for.  If either Mr. Ritz or you have not advised me by august 2, 2010, in a writing meeting the requirements of FED. R. CIV. P. 29 that Mr. Ritz will amend, we will assume Mr. Ritz refuses to amend, and will proceed accordingly.

**Exhibit E**.  Ritz did not agree to amend as requested.  No amended answers have ever been served.

20.   And, although Ritz's attorney circulated an electronic *redlined draft* of *proposed* amended responses, the *proposed* amended answer to Interrogatory No. 10, for example, still omits requested information and purports to be based on

---

[16]   Ritz's attorney, William D. Weber, has thus far not entered an appearance in the case on Ritz's behalf, although he appears to have advised Ritz on some matters.

"public records contained on the secretary of state web site." **Exhibit F**. The information is specifically *not* based on the corporate minute books Ritz admits he has in his possession and reflects outdated addresses where the listed individuals can no longer be found. *Id*. Somewhat cynically, Ritz repeats his offer to produce his 150,000 pages of documents a second time for Husky to seine. *Id*.

21. It would take hours for the Court to cross-compare the original evasive answers with the unserved, *proposed* amended answers. If the Court did so, the Court would find that the amended answers to Husky's other requests were chiefly in form, but not in substance. Ritz continues to obscure relevant, discoverable information behind mountains of extraneous paper.

## IV. Conclusion

21. Because Ritz's discovery abuse was deliberate, flagrant, substantially prejudicial to Husky, personally directed by Ritz, and would cause unnecessary delays in the expeditious resolution of this litigation, the Court should grant Husky's motion, strike Ritz's pleadings, and enter a default judgment against Ritz.

## V. Prayer

22. For these reasons, Husky prays that the Court grant its motion, strike Ritz's pleadings, and enter a default judgment in favor of Husky International Electronics, Inc. Husky prays for such other and further relief, at law or in equity, as to which it shall show itself to be lawfully entitled.

Respectfully submitted,

**ESCAMILLA, PONECK & CRUZ, LLP**

By: _____/s/ Jeffrey L. Dorrell_____

Jeffrey L. Dorrell
State Bar No. 00787386
Federal I.D. 18465
201 Stratford
Houston, Texas 77006-3219
Telephone: 713-807-1188 (Direct)
FAX: 713-864-0048
jdorrell@epc-law.com
**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that on _____10-7_____, 2010, a true and correct copy of the foregoing was served by first class U.S. mail (postage prepaid) or facsimile transmission in accordance with FED. R. CIV. P. 5(b), unless served by electronic notice via ECF to the following pro se parties or counsel of record at the addresses and telephone numbers shown:

Mr. Daniel Lee Ritz, Jr.
738 Highway 6 South, Suite 230
Houston, Texas 77079
Office: 281-493-3849 (X-7794)
Cell: 713-269-4969
FAX: 281-293-8095
bor@capnetcapitalpadners.com
Defendant Pro se

_____/s/ Jeffrey L. Dorrell_____

**JEFFREY L. DORRELL**