IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/04/2011

| | | |
|---|---|---|
| In re: | § § | |
| DANIEL LEE RITZ, JR. | § § | Case No. 09-39895-H4-7 |
| Debtor. | § § § | Chapter 7 |
| HUSKY INTERNATIONAL ELECTRONICS, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 10-03156 |
| DANIEL LEE RITZ, JR. | § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION REGARDING PLAINTIFF'S ORIGINAL COMPLAINT
TO DENY DISCHARGEABILITY OF DEBT PURSUANT TO
11 U.S.C. § 523**
[Adv. Docket No. 1]

**I. INTRODUCTION**

This adversary proceeding concerns an individual debtor who authorized transfers of funds out of one corporation into the accounts of several other companies—all of which he controlled. As a result of these transfers, the one corporation was drained of all of its cash and, therefore, could not pay its creditors. One of these creditors has filed suit against the debtor, alleging that: (a) because of the debtor's actions, he has become personally liable for the debt owed by the corporation; and (b) this debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) & (a)(6).[1] For the reasons set forth herein, this Court concludes that there is no debt to

---

[1] Reference to any section (*i.e.*, §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Any reference herein to "the Code" refers to the United States Bankruptcy Code.

discharge because the plaintiff failed to establish any liability against the debtor. Therefore, the plaintiff cannot prevail under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) & (a)(6).

## II. STATUS OF THE MAIN CASE

Daniel Lee Ritz, Jr. (the Debtor or Ritz) filed his voluntary Chapter 7 petition on December 31, 2009. [Main Case, No. 09-39895, Docket No. 1]. The meeting of creditors was held on February 19, 2010. The case appeared to be routine with the exception of the timely filing of the pending adversary proceeding. Indeed, the Chapter 7 Trustee eventually represented that there were no assets available for distribution to pay claims; and, accordingly, on February 25, 2011, this Court signed a final decree closing the main case. [Main Case, No. 09-39895, Docket No. 34].[2] However, on June 2, 2011, the Trustee filed a Motion to Reopen the Chapter 7 Case by setting forth that the Trustee has received information that the Debtor had not disclosed all of his assets and that the case should be reopened. [Main Case, No. 09-39895, Docket No. 36]. On June 9, 2011, this Court signed the Order Granting this Motion to Reopen. [Main Case, No. 09-39895, Docket No. 37]. Accordingly, at this point, the Chapter 7 Trustee is conducting an investigation to determine whether there are, in fact, assets of sufficient value to make a distribution to creditors of this estate.

## III. FINDINGS OF FACT[3]

1. On March 31, 2010, Husky International Electronics, Inc. (Husky) filed Plaintiff's Original Complaint to Deny Dischargeability of Debt Pursuant to 11 U.S.C. § 523 (the Complaint), which initiated this adversary proceeding. [Adv. Docket No. 1].

---

[2] The signing of the final decree with respect to the main case did not, however, resolve the pending adversary proceeding. The Court still had to hold the trial on this discrete dispute.

[3] These Findings of Fact are based on both the exhibits admitted at trial and the testimony that was adduced in open court. If there is no corresponding exhibit citation with a finding of fact, the finding of fact is nevertheless supported by testimony adduced at trial. Further, even if a finding of fact does have an exhibit citation, that does not preclude testimony adduced at trial from also supporting such a finding.

2

2. Prior to the filing of the Complaint and the filing of the bankruptcy petition, from 2003 to 2007, Husky sold and delivered goods to Chrysalis Manufacturing Corp. (Chrysalis), pursuant to a written contract. [Plaintiff's Ex. Nos. 1 & 3].

3. Chrysalis failed to pay for goods sold and delivered to Chrysalis by Husky in the amount of $163,999.38. [Plaintiff's Ex. No. 2].

4. At all relevant times, the Debtor was in financial control of Chrysalis.[4] Moreover, he was the director and owner of at least 30% of Chrysalis common stock. [Adv. Docket No. 1, p. 2–3, ¶ 6; Adv. Docket No. 8, p. 2, ¶ 6].

5. At all relevant times, Chrysalis was not paying its debts as they became due.

6. At all relevant times, the sum of Chrysalis' debts were greater than all of Chrysalis' assets at a fair valuation.

7. Between November 2006 and May 2007, the Debtor caused $677,622.00 of Chrysalis' funds to be transferred to ComCon Manufacturing Services, Inc., a/k/a VirTra Merger Corporation, without Chrysalis receiving reasonably equivalent value for the transfer. [Plaintiff's Ex. No. 5].

8. Between November 2006 and May 2007, the Debtor caused $121,831.00 of Chrysalis' funds to be transferred to CapNet Securities Corporation, without Chrysalis receiving reasonably equivalent value for the transfer. [Plaintiff's Ex. No. 5].

9. Between November 2006 and May 2007, the Debtor caused $52,600.00 of Chrysalis' funds to be transferred to CapNet Risk Management, Inc., without Chrysalis receiving reasonably equivalent value for the transfer. [Plaintiff's Ex. No. 5].

10. Between November 2006 and May 2007, the Debtor caused $172,100.00 of Chrysalis' funds to be transferred to Institutional Capital Management, Inc., and Institutional

---

[4] It is undisputed that, for all intents and purposes, Chrysalis is the same entity as Altatron.

Insurance Management, Inc., without Chrysalis receiving reasonably equivalent value for the transfer. [Plaintiff's Ex. No. 5].

11. Between November 2006 and May 2007, the Debtor caused $99,386.90 of Chrysalis' funds to be transferred to Dynalyst Manufacturing Corporation, without Chrysalis receiving reasonably equivalent value for the transfer. [Plaintiff's Ex. No. 5].

12. Between November 2006 and May 2007, the Debtor caused $26,500.00 of Chrysalis' funds to be transferred to Clean Fuel International Corp., a/k/a Gulf Coast Fuels, Inc., without Chrysalis receiving reasonably equivalent value for the transfer.

13. Between November 2006 and May 2007, the Debtor caused $11,240.00 of Chrysalis' funds to be transferred to CapNet Advisors Incorporated, without Chrysalis receiving reasonably equivalent value for the transfer. [Plaintiff's Ex. No. 5]. During all of these transfers, Chrysalis was still operational.

14. At all relevant times, the Debtor owned: (1) 30% of Chrysalis; (2) 85% of CapNet Securities Corporation; (3) 100% of CapNet Risk Management, Inc.; (4) 100% of Institutional Insurance Management, Inc.; (5) 40% of Institutional Capital Management, Inc.; (6) 25% of Dynalyst Manufacturing Corporation; and (7) 20% of Clean Fuel International Corp., a/k/a Gulf Coast Fuels. [Adv. Docket No. 8, p. 4, ¶ 9(c)].

15. As a result of the Debtor's orchestration of the fund transfers out of Chrysalis' account, Husky suffered damages in the amount of $163,999.38—which represents the amount owed to Husky by Chrysalis for the goods which Husky delivered to Chrysalis. [Plaintiff's Ex. No. 2].

16. No exhibits were introduced and no testimony was adduced indicating that the Debtor made any oral or written representations to Husky inducing Husky to enter into a contract

with Chrysalis. The only communication that the Debtor ever had with Husky was a telephone conversation between Husky's founder and president, Nick Davis, and the Debtor **after** the parties had entered into a contract and Husky had already shipped product to Chrysalis.

### IV. CREDIBILITY OF WITNESSES

A.     **Husky's Witnesses**

    1.     <u>Daniel Lee Ritz, Jr.</u>

The Court finds that Ritz is not a credible witness. During his testimony at trial, he gave answers which directly contradicted answers he had previously given in discovery. These contradictory statements relate to material issues. For example, his answer to Interrogatory No. 8(i) contradicts his testimony at trial on a very important issue. Interrogatory No. 8(i) reads as follows: "[i]dentify (by name, address, and telephone number) every Person who caused any transfer of money to be made in any amount between November 2006 and May 2007 from Chrysalis to: (i) ComCon Manufacturing Services, Inc . . . and state the exact Dates and amounts of each such transfer of money each such Person made to the forgoing." [Husky's Ex. No. 172]. The Debtor's answer was as follows: "Marlin Williford was the primary person who managed these accounts. Defendant did not initiate nor authorize any of these transfers." [Plaintiff's Ex. No. 172].

The language immediately above reflects a Shermanesque statement by Ritz that he never initiated or authorized any transfers. Yet, at trial, under cross examination by Husky's counsel, Ritz unequivocally admitted that he did authorize such transfers. Moreover, he could not offer any reasonable explanation as to why his answers were blatantly contradictory. On the witness stand, he claimed that he interpreted the interrogatory to mean that Husky wanted to know

5

whether Ritz personally transferred the funds—and Ritz testified that he did not. This explanation is weak because Ritz conceded that he authorized certain individuals to make transfers without the need for them to obtain his approval for each and every transfer. Thus, his explanation is disingenuous, if not downright misleading.

And there is plenty more. For example, at trial, Ritz testified that he disputes that Chrysalis owes any debt to Husky. Ritz then conceded he signed an affidavit on October 24, 2007 representing that Chrysalis did in fact owe a debt to Husky. [Husky's Ex. No. 167] ("I entered into good faith negotiations, on behalf of Defendant Chrysalis, to settle all claims, avoid litigation and obtain a reduction from Plaintiff for any debts Defendant Chrysalis may owe. . . . Unfortunately, anticipated funds to satisfy *that* debt were not received and Chrysalis was unable to make it's [sic] timely payment.") (emphasis added). He later testified that he believes the debt is a little over $100,000.00. So within a few minutes, Ritz went from completely disputing the debt, to representing that a debt is owed, to representing that the debt is in a fairly specific amount. This shell game underscores his lack of credibility.

All in all, the record is replete with Ritz's contradictions on several very germane issues in this suit. Additionally, his frequent inability to recall certain information was not coincidental. His ability to recollect was selective.

Finally, Ritz frequently gave non-responsive answers to questions which were unambiguous. His evasiveness and obfuscation further undermines his credibility. For all of the reasons set forth above, this Court finds Ritz not to be a credible witness. The Court gives very little weight to his testimony.

2.   Nicolas C. Davis

Nicolas C. Davis was the president of Husky. The Court finds that his testimony is very credible, and the Court gives substantial weight to this testimony.

3.   Nancy K. Finney

Nancy K. Finney worked as a comptroller for Ritz-controlled companies for approximately four years. The Court finds that her testimony is very credible, and the Court gives substantial weight to this testimony. Of particular significance, she testified that Ritz made the decisions to transfer large sums of cash out of Chrysalis's operating account and into the accounts of other companies controlled by Ritz.

4.   James D. Rogers

James D. Rogers (Rogers) was Vice-President of Corporate Finance of CapNet Securities Corporation for approximately 2.5 years. The Court finds that his testimony is very credible, and the Court gives substantial weight to this testimony. Of particular significance, he testified that Ritz ran all of the operations of the various companies in which he had an interest. He also testified that he did not participate in, or have knowledge about, any transfers of funds from Chrysalis to other entities controlled by Ritz—which is contrary to the testimony given by Ritz. The Court believes that Rogers told the truth and that Ritz did not.

5.   Richard Hollan

Richard Hollan (Hollan), at one time, owned shares of Institutional Capital Management, Inc.—which is an entity owned 40% by Ritz. The Court finds that his testimony is very credible, and the Court gives substantial weight to this testimony. Of particular significance, Hollan testified that he has known Ritz for approximately twenty-five years and does not have a high opinion of him. Indeed, he testified that Ritz is not trustworthy. Finally, he testified that he is

familiar with Ritz's business practices, and that Ritz controls all of the flow of money relating to corporations which he controls.

**B.     The Debtor's Witnesses**

   1.     Heather Cheaney

The Court finds Ms. Cheaney to be credible, but does not find her testimony to be significant on any important points. Therefore, the Court gives Ms. Cheaney's testimony little weight.

   2.     Daniel Lee Ritz, Sr.

While the Court finds Daniel Lee Ritz, Sr. to be a credible witness, the Court gives less weight to his testimony because it recognizes that many of his statements were—not unsurprisingly—aimed at helping his son's case.

   3.     Craig Takacs

The Court finds Mr. Takacs to be a bit evasive in his responses to the questions posed to him. Accordingly, the Court gives little weight to his testimony.

   4.     L. Andrew Wells

The Court does not find Mr. Wells to be a credible witness and, therefore, gives his testimony little weight.

   5.     Marlin R. Williford

The Court finds Mr. Williford to be direct and forthcoming in his testimony. Accordingly, the Court finds Mr. Williford to be a credible witness and gives his testimony significant weight. However, his testimony did not concern the transfers of cash that Ritz orchestrated out of Chrysalis's operating account into the accounts of other entities controlled by Ritz.

## V. CONCLUSIONS OF LAW

### A. Jurisdiction, Constitutional Authority to Enter a Final Judgment, and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), and (O).

The Supreme Court's recent decision in *Stern v. Marshall* recognized significant limitations on bankruptcy courts' authority. No. 10-179, 564 U.S. ---, 2011 WL 2472792 (June 23, 2011). The undersigned bankruptcy judge therefore provides analysis of his constitutional authority to enter a final judgment in this adversary proceeding.

*Stern* concerned a bankruptcy court's authority over a debtor's common-law counterclaim to a proof of claim filed against the estate. The Supreme Court held that a bankruptcy court may not constitutionally enter a final judgment over a counterclaim that would not necessarily be resolved by the resolution of the proof of claim. *Id.* at *24. The counterclaim did not constitute a "public rights" dispute. *Id.* at *21. Although public rights disputes may be decided by non-Article III tribunals, public rights disputes must involve rights "integrally related to a particular federal government action." *Id.* at *17-18. Entering a final judgment with respect to the counterclaim would be an impermissible exercise of the judicial power of the United States. *Id.* at *21.

The broader applicability of the Court's decision remains unclear. Other types of disputes frequently decided by bankruptcy courts may also require adjudication by an Article III court. *Granfinanciera, S.A. v. Nordberg*, for example, held that the adjudication of a fraudulent

9

transfer claim against a creditor who had not filed a proof of claim did not fall within the public rights exception. 492 U.S. 33, 54–55 (1989). Following *Stern*, it is unclear whether the adjudication of a fraudulent transfer claim against a creditor who *has* filed a proof of claim falls within the public rights exception. The Court's authority over matters involving state-law causes of action is particularly questionable.

The Court concludes, however, that it may exercise authority over essential bankruptcy matters under the "public rights" exception. Under *Thomas v. Union Carbide Agric. Prods. Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363–64 (2006); *see N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern*, 2011 WL 2472792, at *20 n.7 ("We noted [in *Granfinanciera*] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

This suit involves a dispute over the Debtor's discharge. The right to a discharge is established by the Bankruptcy Code and is central to the public bankruptcy scheme. *See Katz*, 546 U.S. at 363–64 (including a discharge among the "[c]ritical features" of a bankruptcy proceeding). A debtor, upon surrendering his or her assets for distribution in a Chapter 7 case, is entitled to a discharge. *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("A bankruptcy court is able to provide the debtor a fresh start in this manner . . . because the

10

court's jurisdiction is premised on the debtor and his estate, and not on the creditors."). Determinations of whether a debtor meets the conditions for a discharge are integral to the bankruptcy scheme, and the Bankruptcy Court has the authority to make such determinations.

Similarly, the Bankruptcy Court has the authority to determine when the statutorily established right to a discharge does *not* apply. Unless a creditor proves the applicability of an exception to discharge, the creditor is entitled to collect only against the bankruptcy estate. *Tower Credit, Inc. v. Gauthier (In re Gauthier)*, 349 F. App'x 943, 945 (5th Cir. 2009) (per curiam) ("[T]he creditor claiming nondischargeability . . . has the burden of proving, by a preponderance of the evidence, that the debt is exempt from discharge."). When a bankruptcy court determines the extent of a creditor's nondischargeable claim, the court simply decides that a particular creditor is entitled to something more than the creditor would otherwise get out of the bankruptcy bargain. Such determinations are inextricably tied to the bankruptcy scheme and involve the adjudication of rights created by the Bankruptcy Code. This case therefore falls within the Bankruptcy Court's authority, and the Bankruptcy Court's judgment is final.

Venue in the suit at bar is proper pursuant to 28 U.S.C. § 1409.

**B.     The Debtor is not liable to Husky pursuant to Texas Business Organizations Code § 21.223(b) and, therefore, Husky cannot prevail under 11 U.S.C. § 523(a)(2)(A).**

An officer, director, or shareholder of a company—*i.e.*, —"may only be held liable for the corporation's breach of contract under traditional veil piercing laws." *Kwasneski v. Williams (In re Williams)*, Adv. No. 10-05077, 2011 Bankr. LEXIS 266, at *7 (Bankr. W.D. Tex. Jan. 24, 2011). Previously, Texas law allowed for the corporate veil to be pierced under three expansive categories: "(1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a

11

fraud." *Rimade Ltd. v. Hubbard Enters. Inc*, 388 F.3d 138, 143 (5th Cir. 2004) (quoting *W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994)).

However, Section 2.223(b) of the Texas Business Organizations Code (TBOC) imposes a new requirement for a litigant seeking to pierce the corporate veil for breach of contract. Unquestionably, the debt that Husky alleges is owed to it is based upon Chrysalis' breach of contract. This new provision provides that the plaintiff must also establish that the defendant shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder." Tex. Bus. Orgs. Code § 21.223(b) (West 2007); *see also Rimade*, 388 F.3d at 143; *Williams*, 2011 Bankr. LEXIS 266, at *8. Accordingly, for Husky to impose liability on the Debtor for the contractual debt which Chrysalis owes to Husky, Husky must prove that: (a) the Debtor's conduct amounts to actual fraud on Husky; and (b) the Debtor's conduct was primarily for his direct personal benefit. Tex. Bus. Org. Code § 21.223(b); *Rimade*, 388 F.3d at 143; *JNS Aviation, Inc. v. Nick Corp.*, 418 B.R. 898, 907 (N.D. Tex. 2009); *Williams*, 2011 Bankr. LEXIS 266, at *7–9.

Actual fraud under Texas law is defined as "the misrepresentation of a material fact with intention to induce action or inaction, reliance on the misrepresentation by a person who, as a result of such reliance, suffers injury." *Trs. of the N.W. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994) (internal quotation marks and citation omitted). The elements of actual fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the

12

representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young L.L.P. v. Pac Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

The record is wholly devoid of any such representation made by the Debtor. Indeed, the record reflects that the only communication that the Debtor had with Husky was a telephone conversation between Husky's founder and president, Nick Davis, and the Debtor **after** Husky had already shipped product to Chrysalis. [Finding of Fact No. 16]. Thus, because the Debtor could not possibly have made a representation to Husky that Husky relied upon before shipping the product to Chrysalis, Husky cannot satisfy the most crucial element for establishing actual fraud. Further, the tests for fraud under section 22.223 of TBOC and the requirements of section 523(a)(2)(A) of the Code are virtually the same.[5] *See Bale v. Ryan (In re Ryan)*, 443 B.R 395, 408 (Bankr. N.D. Tex. 2010). Accordingly, this Court concludes that Husky's common law fraud cause of action must fail and, therefore, Husky may not prevail under § 523(a)(2)(A).[6]

C. **The Debtor does not owe a fiduciary duty to the Plaintiff and, therefore, Husky cannot prevail under 11 U.S.C. § 523(a)(4).**

Husky contends that the Debtor breached a fiduciary duty to it and that damages flow from that breach. In the 1939 case of *Conway v. Bonner*, however, the Fifth Circuit held that directors of a corporation do not owe a fiduciary duty to creditors of the corporation "so long as [the corporation] continues to be a going concern, conducting its business in the ordinary way,

---

[5] At trial, after Husky put on its case in chief, the Debtor made an oral motion for a directed verdict on all causes of action brought by Husky. This Court ruled that the Plaintiff could not go forward with its prosecution of § 523(a)(2)(A), for the Plaintiff was unable to prove that the Defendant committed actual fraud. The Court denied the motion for directed verdict in all other respects.

[6] Husky's causes of action alleging equitable recovery in quantum meruit and breach of contract must also fail, as these causes of action are against Chrysalis, not Ritz in his individual capacity; the corporate form maintains Ritz's shield against any liability.

without some positive act of insolvency, such as the filing of a bill to administer its assets . . . .". 100 F.2d 786, 787 (5th Cir. 1939).

More recently, the Fifth Circuit has stated in dicta that "[o]fficers and directors that are aware that the corporation is insolvent, or within the 'zone of insolvency' as in this case, have expanded fiduciary duties to include the creditors of the corporation." *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 534 n.24 (5th Cir. 2004).[7] However, the *Carrieri* statement is not binding on this Court for two reasons: (1) the statement in *Carrieri* is dicta, and, as such, is not binding; and (2) even if *Carrieri* does contradict *Conway*, *Carrieri* has no precedential value because "[w]here two previous holdings or lines of precedent conflict, the earlier opinion controls and is the binding precedent in the circuit." *Floyd v. Hefner*, No. H-03-5693, 2006 WL 2844245, at *12 (S.D. Tex. Sept. 29, 2006) (concluding that the language in *Carrieri* is dicta because it "could have been deleted without seriously impairing the analytical foundations of the holding and, being peripheral, may not have received the full and careful consideration of the court that uttered it.") (quoting *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000)); *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991) (internal citations omitted). Accordingly, *Conway* is binding on this Court and *Carrieri* is not.

The case of *Floyd v. Hefner*, written by the Honorable Melinda Harmon, United States District Judge for the Southern District of Texas, thoroughly and extensively analyzes this very issue and reaches a conclusion which this Court is bound to follow—namely, that officers and directors do not owe a fiduciary duty to creditors when their corporation is in the zone of insolvency. *Floyd*, 2006 WL 2844245, at *10. Judge Harmon's analysis guides this Court's

---

[7] Other courts have interpreted *Carrieri* to mean that when a corporation is within the zone of insolvency, creditors have the ability to bring a derivative suit for violation of fiduciary duties. *Comerica Bank v. Rajabali (In re Rajabali)*, 365 B.R. 702, 708 (Bankr. S.D. Tex. 2007).

conclusion[8] that only the trust fund doctrine enables creditors to sue a corporation's officers and directors. *Id.* at *18–22. Understandably, "to pursue a successful trust fund claim, one must prove that a corporation is a) insolvent and b) ceased to do business at the time of the challenged transaction." *Askanase v. Fatjo*, 130 F.3d 657, 671 (5th Cir. 1997) (citing *Fagan v. La Gloria*, 494 S.W.2d 627, 628 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ)). Here, like in *Floyd*, the trust fund doctrine is inapplicable. At the time of the subject transactions, Chrysalis was still operational. [Finding of Fact No. 13]. Accordingly, the Debtor owed no fiduciary duty to the Plaintiff.

Finally, the concept that officers and directors of a corporation do **not** hold a fiduciary duty to creditors of the corporation is further reinforced by the case of *Comerica Bank v. Rajabali*, 365 B.R. 702, 708 (Bankr. S.D. Tex. 2007). In that case, the Honorable Marvin Isgur, Chief United States Bankruptcy Judge for the Southern District of Texas, held that directors do not hold fiduciary duties directly to creditors; "rather, when a corporation is insolvent, creditors have the ability to enforce such duties which continue to exist as to the corporation." *Id.* (citing *Floyd*, 2006 WL 2844245, at *10). Stated differently, even when the corporation is insolvent, a creditor may not directly bring a lawsuit against officers and directors for breach of fiduciary duty. Instead, a creditor is able to bring a derivative lawsuit on behalf of the corporation against the directors. *Id.* And, this is what the Husky should have done in this suit. Husky should have done the following: (a) brought a derivative lawsuit against the Debtor on behalf of Chrysalis;[9]

---

[8] District Judge Harmon held that *Conway* remains binding precedent in the Fifth Circuit. *Id.* at *11–16. This Court believes that it is bound not only by Fifth Circuit rulings, but also by the rulings of the District Court. *In re MPF Holding U.S. LLC*, 443 B.R. 736, 753 (Bankr. S.D. Tex. 2011). Because District Judge Harmon has held that *Conway* is binding precedent, the undersigned judge will apply *Conway* to the pending dispute in this Court.

[9] For a thorough discussion of this issue, see *Rajabali*, 365 B.R. at 708.

and (b) collected on that debt pursuant to applicable law.[10] This, however, Husky did not do. Therefore, Husky is out of luck and may not prevail under § 523(a)(4).

### D. Husky has failed to prove that the Debtor committed willful and malicious injury to Husky or to Husky's property and, therefore, Husky cannot prevail under 11 U.S.C. § 523(a)(6).

The record is wholly devoid of any proof that the Debtor willfully and maliciously injured Husky or Husky's property. While Husky's complaint makes a glancing reference to 11 U.S.C. § 523(a)(6), that alone is not enough to preserve a claim under this provision—no exhibits were introduced, no testimony was adduced, and no briefing was done relating to § 523(a)(6). *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs." (citation omitted)). Moreover, given the nature of the transaction between Husky and Chrysalis, even if Husky's complaint and briefing had made more substantive references to § 523(a)(6), it is highly doubtful that a different result could follow. Husky provided goods to Chrysalis on an entirely unsecured basis. [Finding of Fact No. 16]. Typically, complaints brought under § 523(a)(6) by creditors involved in a business transaction involve secured creditors who are seeking to prevent a discharge of a debt where the debtor has: (1) deliberately sold collateral out of trust and spent the sale proceeds; or (2) deliberately destroyed or damaged the collateral. *See, e.g., Friendly Fin. Serv. Mid-City, Inc. v. Modicue (In re Modicue)*, 926 F.2d 452 (5th Cir. 1991). This Court has found no case law where an unsecured creditor trade creditor has obtained a judgment for nondischargeability under §

---

[10] In the alternative, Husky could have sued Chrysalis in state court and sought to have a receiver appointed. Then, Husky could have convinced that receiver to file suit against the Debtor on behalf of the corporation. Alternatively, Husky could have sought to put Chrysalis into an involuntary Chapter 7, and then made demand upon the Chapter 7 trustee to sue the Debtor on behalf of the corporation, including seeking a judgment of nondischargeability.

523(a)(6) where the debtor has simply failed to honor a contractual obligation to pay for the goods or services provided by that creditor.[11] Accordingly, Husky may not prevail under 11 U.S.C. § 523(a)(6).

## VI. Conclusion

This Court acknowledges that the Debtor drained substantial funds out of Chrysalis's operating account and funneled these funds to other entities controlled by the Debtor. Moreover, this Court has found that the Debtor is not a credible witness. So—this Court shares Husky's view that the Debtor is not an upstanding businessman who can be trusted. The Court is therefore sympathetic to Husky's request for relief. Nevertheless, the Texas Legislature, for better or worse, has set a high bar for plaintiffs seeking to pierce the corporate veil in order to impose individual liability. Indeed, just a few years ago, Husky may have prevailed in his action against the Debtor. But, the Texas Legislature has changed the statute, and now Husky, like any plaintiff, must prove actual fraud. Actual fraud, however, is difficult to prove, and the Legislature has made clear that actions to pierce the corporate veil will be few and far between.

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry on the docket of this opinion.

Signed on this 4th day of August, 2011.

*[signature]*

Jeff Bohm
United States Bankruptcy Judge

---

[11] Husky's breach of contract claim "fails, as a matter of law, to establish that [the Debtor] caused a 'willful and malicious injury' for purposes of § 523(a)(6). While an intentional breach of contract can be excepted from discharge under § 523(a)(6) when it is accompanied by malicious and willful tortious conduct, [Husky] . . . failed to identify any tortious action by the [Debtor] that caused a willful and malicious injury." *Eagle Sindh, Inc. v. Desai (In re Desai)*, Adv. No. 07-04190, 2009 Bankr. LEXIS 2609, at *19–20 (Bankr. E.D. Tex. Sept. 2, 2009).